# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| Corey Shelton (#B-68216), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 CV 50045 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Sup't Chris Melvin, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's application for leave to proceed *in forma pauperis* [3] is granted. The court authorizes and orders the trust fund officer at plaintiff's place of incarceration to forward to the Clerk of Court an initial partial filing fee of $19.24, and to continue making monthly deductions from plaintiff's account in accordance with this order. The court directs the clerk to mail a copy of this order to the trust fund office at the Dixon Correctional Center. However, the court summarily dismisses the complaint on initial review pursuant to 28 U.S.C. § 1915A for failure to state a colorable federal claim. The case is terminated. Plaintiff's motions for attorney representation [4] and for service of process at government expense [5] are denied as moot. This dismissal counts as one of plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g).

## STATEMENT - OPINION

Plaintiff Corey Shelton, an Illinois state prisoner, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants, officials at the Dixon Correctional Center, violated plaintiff's constitutional rights by denying him due process and equal protection. More specifically, plaintiff alleges that an internal affairs investigator wrongfully pressed prison disciplinary action against him, that a work supervisor improperly removed him from his job assignment, and that the supervisor, the warden, and a counselor refused to restore him to his job after he was exonerated of the charge. Currently before the court are plaintiff's application to proceed *in forma pauperis*, his complaint for initial review under 28 U.S.C. § 1915A, his motion for attorney representation, and his motion for service of process at government expense.

Plaintiff's application for leave to proceed *in forma pauperis* demonstrates that he cannot prepay the filing fee. The court therefore grants his motion. Pursuant to 28 U.S.C. §§ 1915(b)(1) and (2), the court orders: (1) plaintiff to immediately pay (and the facility having custody of him to automatically remit) $19.24 to the Clerk of Court for payment of the initial partial filing fee and (2) plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month

during which he receives $10.00 or more, until the $350 filing fee is paid in full. The court directs the Clerk of Court to ensure that a copy of this order is mailed to each facility where plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify plaintiff's name and the case number assigned to this case.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Courts screen prisoner litigation claims in the same manner as ordinary motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

**Facts**

Plaintiff Corey Shelton is an Illinois state prisoner, confined at the Dixon Correctional Center at all times relevant to this action. Defendant Dan Newman is a correctional lieutenant at Dixon, as well as the head of the facility's Internal Affairs Office. Defendant Chris Melvin is the prison's Superintendent of Eyeglass Industry. Defendant Christine Terry is a counselor at Dixon. Defendant Donald Enloe was Dixon's warden at the time of the events giving rise to his lawsuit.

Plaintiff alleges the following facts, assumed true for purposes of the court's threshold review: prior to the events underlying the complaint, plaintiff held a job in the prison's Optical Lab, under the supervision of defendant Melvin. Plaintiff worked in the prison mailroom, where

his responsibilities included mailing out eyeglasses to vendors that had contracts with the Illinois Department of Corrections.

Melvin occasionally issued warnings and reminders to his prison employees that they had to comport with certain rules. In 2013 Melvin released a memo to his inmate employees concerning noise levels, inmates "visiting" on the job, and the appropriate attire for employees. *See* [1] at 18. The memo warned inmates that due to recurring issues in these areas, prison employees faced progressively increased discipline for rule infractions, from a verbal warning for a first offense, to a one-day suspension for a second offense, to termination for a third offense. *See id.* at 18-21.

Plaintiff never received any complaints about his job performance. The packages he sent out were never returned because he had erred in any manner. He never received a verbal warning for a first offense, nor was he ever suspended for a second instance of alleged misconduct. Plaintiff always reported to work on time and performed his job duties as directed.

Melvin seemed to favor certain inmate workers over others. He designated them as "line leaders," referred to them as his "eyes and ears," allowed them to supervise the other inmate employees, and permitted them to say and do virtually whatever they pleased. Melvin treated these chosen few inmates as equal colleagues rather than as prisoner employees.

On or about March 2, 2016, someone mailed plaintiff's cellmate (McClure) a cell phone battery. Dixon correctional officials evidently intercepted the battery. Officials then placed plaintiff and his cellmate on investigative status. As a result of their change in status, the inmates were transferred to the segregation unit pending the outcome of the investigation. Plaintiff spent thirty days in administrative segregation.

On the same day that plaintiff was placed on investigative status, he received notice from defendant Melvin notifying him that he had been terminated from his prison job in the Optical Lab. The notice stated, "Effective immediately you are hereby **TERMINATED** from the Correctional Industries Program at the Dixon Optical Lab for conduct and behavior violations." *See* [1] at 17 (emphasis in original). Plaintiff was afforded no due process in connection with his discharge, and the disciplinary matter was wholly unrelated to plaintiff's job performance.

Defendant Newman, the head of Dixon's Internal Affairs Office, conducted the ensuing investigation. Inmate McClure passed a voice stress analysis. The lie detector results tended to corroborate McClure's contention that he had no knowledge of or involvement in the contraband battery's shipment into the facility.

Plaintiff likewise maintained that he had no knowledge or information concerning the cell phone battery. [He does not disclose the results of any polygraph examination.] Plaintiff pointed out that the package in question was addressed to his cellmate, and not to him.

Both inmates received disciplinary reports that presumably accused them of malfeasance relating to the introduction of the cell phone battery into the institution. Both inmates faced

3

hearings before a prison adjustment committee. The hearing officers found both inmates not guilty of the charge(s).

Once the disciplinary proceedings ended in the two inmates' favor, they returned to the cell they had shared prior to the incident giving rise to the investigation. McClure was reinstated to the job he held prior to the disciplinary investigation; plaintiff was not.

Plaintiff knows of at least four other inmates who were sent to investigative segregation, ultimately exonerated by the adjustment committee, and whom defendant Melvin then reassigned back to their jobs. Plaintiff also identifies a fellow prisoner who was found guilty of unauthorized movement, was sent to disciplinary segregation for ten days, and then got his job back in the Optical Lab.

Plaintiff attempted to file a grievance with respect to correctional officials' failure to reinstate him to his job assignment. Defendant Terry, plaintiff's counselor, refused to accept the grievance. Terry explained that plaintiff was "unassigned from Industries as soon as you went to seg on 3/2. Has nothing to do with the ticket you received." *See* [1] at 16. Plaintiff then filed an emergency grievance with Warden Enloe. To plaintiff's knowledge, defendant Enloe never "looked into the situation;" instead, he simply classified the issue as a non-emergency. Plaintiff appealed to the Administrative Review Board, but he never received a decision.

**Analysis**

Plaintiff may not sue defendant Newman for placing him on investigative status for thirty days. "[B]eing placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk,* 415 F.3d 678, 679 (7th Cir. 2005) (citing *Sandin v. Conner,* 515 U.S. 472, 485-86 (1995); *Paige v. Hudson,* 341 F.3d 642, 643 (7th Cir. 2003)); *see also Gray v. Taylor*, 714 F. Supp. 2d 903, 909-10 (N.D. Ill. 2010) (Bucklo, J.) (same). An inmate has no due process liberty interest in remaining free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484; *Montgomery v. Anderson,* 262 F.3d 641, 643 (7th Cir. 2001). An inmate has no liberty interest in remaining in the general prison population. *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir. 1995). Administrative segregation for the purposes of institutional safety and security does not trigger a due process right to a hearing. *See Higgs v. Carver,* 286 F.3d 437, 438 (7th Cir. 2002). Plaintiff had no constitutional right to remain in the general population during the 30-day investigation.

Furthermore, plaintiff cannot hold Newman liable under 42 U.S.C. § 1983 for bringing false charges against him. As a general proposition, it is not unreasonable for prison officials to hold cellmates equally responsible, on a constructive possession theory, for contraband found in their cell. In *Hamilton v. O'Leary,* 976 F.2d 341 (7th Cir. 1992), all four cellmates were found guilty of disciplinary offenses after correctional officials discovered shanks and other weapons in the inmates' shared cell. The U.S. Court of Appeals for the Seventh Circuit found that a 25 percent probability of guilt was enough to uphold a finding of guilt in prison disciplinary

proceedings. *Id.* at 345. The Court of Appeals reasoned that it was highly probable that all of the inmates would have known about and/or had access to the weapons in such a small space. *Id.* In contrast, the Court of Appeals more recently granted habeas in a disciplinary matter when tobacco was found in a crawl space to which multiple prison workers had access. *Austin v. Pazera*, 779 F.3d 437, 439 (7th Cir. 2015). In that case, the plaintiff "appear[ed] to have been picked at random for punishment," as there was no other evidence either tying him to the tobacco or exculpating the other prisoners who had access to the crawl space. *Id.* The instant case is closer to the scenario presented in *Hamilton*. Defendant Newman filed disciplinary reports against both inmates who occupied the cell where the cell phone battery was sent. Plaintiff concedes that his cellmate, McClure, passed a polygraph examination when questioned about the parcel addressed to him. If McClure was not the intended recipient, then plaintiff was the next logical suspect.

More importantly, the adjustment committee hearing officers ultimately found both inmates not guilty of the contraband offense. The Due Process Clause does not protect a prisoner from a false conduct report. "The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974). "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006) (quoting *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999)); *see also Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided"); *Newsome v. McCabe,* 256 F.3d 747, 751-52 (7th Cir. 2001) (holding that no federal cause of action exists for malicious prosecution). So long as an inmate is afforded the necessary procedural safeguards, the process in itself is a constitutionally adequate safeguard against the arbitrary actions of prison officials. *McPherson,* 188 F.3d at 787. In the case at bar, plaintiff does not assert that he was denied due process; to the contrary, the disciplinary board heard the evidence and found him not guilty. Therefore, plaintiff has no viable cause of action relating to the disciplinary proceedings. The court thus dismisses plaintiff's claims against Lieutenant Newman on threshold review.

Moreover, plaintiff has no tenable due process claim arising from his summary discharge from the Optical Lab. An inmate lacks a liberty or property interest in his prison job and thus may not bring a due process challenge to his prison-job removal or reassignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Soule v. Potts*, No. 16-3072, 2017 WL 549026, at *1 (7th Cir. Feb. 10, 2017) (unpublished decision). The Constitution does not give prisoners any substantive entitlements to prison employment. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) (en banc); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010). Melvin had complete discretion to discharge plaintiff from his prison job assignment for any constitutionally permissible reason, or for no reason at all, and plaintiff was not entitled to a hearing or any other due process before he was terminated.

Plaintiff is mistaken in his belief that prison rules required reinstatement of his job once the Adjustment Committee dismissed the charge(s). The Illinois Administrative Code says only,

5

"When a committed person is found not guilty of a rule violation … or an investigation indicates that he did not commit a violation, he **may** be returned to the assignment he held prior to being removed." 20 Ill. Admin. Code § 420.40 (emphasis added). That discretionary rule offers no constitutionally protected interest. In the absence of any liberty or property interest, any purported violation of prison regulations or state laws is not actionable under 42 U.S.C. § 1983. *See Wolfe v. Schaefer*, 619 F.3d 782, 784 (7th Cir. 2010) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 128-30 (1992); *Christensen v. County of Boone,* 483 F.3d 454, 462 n. 2 (7th Cir. 2007)).

In addition, plaintiff cannot bring suit under Section 1983 merely because he is dissatisfied with the handling of his ensuing grievances. There is no constitutional right to an institutional grievance procedure. Illinois statutes and regulations establishing the Department of Corrections' grievance procedures neither create a liberty interest under the Fourteenth Amendment's due process clause, nor do they create a right to sue under state law. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996). Thus, plaintiff cannot sue either defendant Terry for failing to intervene on his behalf or defendant Enloe for declining to treat plaintiff's grievance as a matter of emergency concern.

Finally, the complaint fails to state a cognizable equal protection claim against defendant Melvin. The Equal Protection Clause of the Fourteenth Amendment protects individuals from government discrimination, typically on account of race, national origin, or sex. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). A "prison administrative decision may give rise to an equal protection claim . . . if the plaintiff can establish that the prison officials intentionally and purposefully discriminated against him." *Meriwether v. Faulkner*, 821 F.2d 408, 415 n. 7 (7th Cir. 1987). Generally, "[t]o establish a violation of equal protection, a plaintiff must show that he is a member of a protected class and that: (1) he is similarly situated to members of the unprotected class, (2) he was treated differently than members of the unprotected class, and (3) the defendant acted with discriminatory intent." *Allen v. Hasemeyer*, --- Fed App'x ---, No. 16 1077, 2017 WL 213184, at *1 (7th Cir. Jan. 18, 2017) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)); *see also Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Here, plaintiff does not suggest that Melvin discriminated against him on the basis of his race, color, or creed. Consequently, plaintiff has not shown that he is a member of a protected class.

Plaintiff's personal and factually unsupported belief that he was the victim of "discrimination" is insufficient to give rise to a claim under 42 U.S.C. § 1983. An inmate's subjective belief that he was unfairly treated, without more, does not state a viable equal protection claim. *See Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir. 1983); *Holloway v. Griffin*, No. 14 CV 3209, 2016 WL 525991, at *3 (C.D. Ill. Feb. 9, 2016) (collecting cases). Although plaintiff is aware of instances where other inmates were reinstated following disciplinary proceedings, he will not be able to show that other inmates' situations were "directly comparable in all material respects" to his. *Sanders v. Welborn*, No. 07 CV 0808, 2010 WL 5258069, at *5 (S.D. Ill. Dec. 17, 2010) (African American inmate who claimed that prison guards had used racially derogatory names during a clash failed to establish a prima facie case of racial discrimination under the equal protection clause) (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004) (*inter alia*)). Other inmates would be serving different sentences, and would have different criminal and institutional

histories.  Moreover, plaintiff's suspected implication in a crime involving mail would have an impact on his suitability for his job processing mail.  Thus, the complaint fails to support an inference that there was no rational basis for the perceived difference in treatment, or that defendant Melvin's actions were wholly arbitrary.  Even if the court might have made a different decision with respect to reinstatement, that difference of opinion is not actionable as a constitutional violation.

      For the foregoing reasons, this suit is dismissed for failure to state a claim upon which relief may be granted.  The court assesses plaintiff a "strike" pursuant to 28 U.S.C. § 1915(g), and directs the clerk to enter final judgment.  If plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).  If plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome.  *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998).  If the Court of Appeals should find the appeal to be non-meritorious, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g).  If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he or she is in imminent danger of serious physical injury.  *Id.*  If plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court.  *See* Fed. R. App. P. 24(a)(1).

      Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights.  However, if plaintiff wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  The time to file a motion pursuant to Rule 59(e) cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.  *See* Fed. R. App. P. 4(a)(4)(A)(iv).  Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  The time to file a Rule 60(b) motion cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: 3/10/2017        ENTER:

_____
United States District Court Judge

Notices mailed by Judicial Staff. (MM)

7